IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| TERRY MCCLAIN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-14-026-STE |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of a final judgment. Upon review of the pleadings, the record, and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be **REVERSED AND REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

### I. Procedural Background

Plaintiff's application for benefits was denied initially and on reconsideration. (TR. 12). Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-20). The Appeals Council denied Plaintiff's request for review, thus the

ALJ's decision became the final decision of the Commissioner. (TR. 1-3). This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 26, 2010, the alleged disability onset date. At step two, the ALJ determined that Plaintiff has the following severe impairments: left shoulder pain, mild obesity, depression and low IQ. (TR. 14). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 15).

At step four, the ALJ found Plaintiff could perform her past relevant work as a glass factory relief worker which consisted of the specific jobs of packer, bulk operator, and carton assembler. (TR. 19). The ALJ further found Plaintiff has the residual functional capacity (RFC) to occasionally lift and/or carry 50 pounds or frequently lift and/or carry 25 pounds, stand/or walk for about six hours in an eight-hour work day and sit at least six hours in a workday. (TR. 16). He also found she must avoid work above shoulder level and can do only simple, repetitive tasks. (TR. 16). Finally, the ALJ found that Plaintiff can interact appropriately with supervisors and co-workers only on a superficial work basis and cannot have contact with the public. (TR. 16-17).

Thus, the ALJ found Plaintiff not disabled at step four of the sequential evaluation process. The ALJ made an alternative finding at step five, by applying the Medical Vocational Rules (Grids), as a framework for decision making and by obtaining the testimony of a vocational expert (VE). (TR. 19-20). The VE testified that there were jobs existing in substantial numbers in the national economy that Plaintiff could perform, in particular, the jobs of kitchen helper and janitor. (TR. 20, 52). Accordingly, Plaintiff was found to be not disabled from October 26, 2010, the alleged onset date, through November 16, 2012, the date of the ALJ's decision. (TR. 20).

### III. Issues Presented

Plaintiff's argument on appeal is that the ALJ erred in his analysis of Plaintiff's credibility and also erred in his analysis of Plaintiff's IQ level.

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

Plaintiff's first argument on appeal is that the ALJ erred in his assessment of her credibility. (ECF No. 14:4-9). The standards for evaluating the effects of subjective symptoms on a claimant's ability to work is well established. The ALJ must consider (1)

whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. *Luna v. Bowen*, 834 F.2d 161, 163–65 (10th Cir.1987). Application of these standards leads this court to conclude the ALJ erred in his analysis of Plaintiff's credibility.

The ALJ's initial error occurred in the first factor discussed in the *Luna* decision, *i.e.*, whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain. *See Luna*, 834 F.2d at 163. Plaintiff alleges that she suffers from several severe medical impairments including, but not limited to, fibromyalgia. (TR. 14-15). In evaluating this condition, the ALJ purportedly applied SSR 12-2p, titled "Titles II and XVI: Evaluation of Fibromyalgia." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). However, the ALJ failed to apply this rule correctly.

SSR 12–2p provides guidance on an ALJ's development of evidence and evaluation of fibromyalgia in disability claims. Pursuant to SSR 12-2p, a claimant can establish that she has a medically determinable impairment of fibromyalgia if the claimant meets *one of two* different sets of criteria. *Id.* at *2-3. The first set of criteria requires (1) a "history of widespread pain-that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain

4

(the cervical spine, anterior chest, thoracic spine, or low back)-that has persisted ... for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination ... found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* The second, alternative test requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

The ALJ discussed and applied only the first set of criteria when evaluating and outright rejecting the diagnoses of fibromyalgia in the record. (TR. 14-15). The ALJ referenced Dr. Moore's April 30, 2011 diagnosis of fibromyalgia and then stated that, based on 12-2p, he thought the diagnosis medically non-determinable from the physician's report because Dr. Moore did not apply or discuss all three criteria. (TR. 14). The ALJ also rejected the same diagnosis from the consultative examiner, Dr. King, because although Dr. King found Plaintiff had 16 of 18 tender points, Plaintiff "had the normal range of motion in all her joints" and "did not show signs or gestures of pain throughout the exam." (TR. 15). The ALJ further explained that Dr. King did not discuss

5

the first and third requirements of the SSR 12-2p test and therefore, did not offer a "solid diagnosis of fibromyalgia." (TR. 15).

It is clear from his analysis the ALJ completely overlooked the second test for evaluating fibromyalgia set forth in 12-2p. There is extensive evidence in the record that is relevant to SSR 12-2p's alternate test. In addition to the positive tender points notations in Dr. King's records, discussed above, his notes also included "[c]hronic whole body pain, certainly sounds like fibromyalgia; however, the claimant is currently not on SSRI. None of this pain is evidence [sic] from physical exam. She had normal range of motion of all joints and did not show signs or gestures of lot of pain on exam. This has been ongoing for 30 years and has gotten slowly progressively worse." (TR. 251). On April 30, 2011, when Plaintiff was seen by Dr. Moore in the Stillwater Medical Center emergency room, he noted anxiety and "acute exacerbation of fibromyalgia" in his departure diagnosis. (TR. 280-82). At that time, Plaintiff complained of muscle pain, including neck pain radiating to the right shoulder. (TR. 280-81). In addition to the diagnoses of fibromyalgia, Plaintiff's records show a history of pain and related complaints and problems as well as testimony regarding how this limits her daily activities. (TR. 32, 34-36, 37-38, 45-46, 251, 280-82, 293, 301, 343, 358-59).

The ALJ's final determination that Plaintiff was not entirely credible with respect to her complaints of incapacitating pain, fatigue, and other symptoms is made problematic by his failure to properly evaluate Plaintiff's condition of fibromyalgia. However, SSR 12-2p notes that the symptoms and signs of fibromyalgia vary in severity

over time and may even be absent on some days. *Id.* at *5. "For a person with [fibromyalgia,], we will consider a longitudinal record whenever possible because the symptoms [] can wax and wane so that a person may have bad days and good days." *Id.* at *6. *See also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion"); *accord Sanchez v. Astrue*, No. 08-560-CV-REB, 2009 WL 4810696, at *4 (D. Colo. Dec. 10, 2009).

The court is unable to determine whether the ALJ would have reached different conclusions in steps two, three, four and five of the sequential analysis had he reviewed the record and applied the second criteria in SSR 12–2p for evaluating this condition. Thus, remand on this issue is appropriate. *See Schuster v. Colvin*, No. 13-CV-0718-WJM, 2014 WL 803461, at *3 (D. Colo. Feb. 28, 2014) (remanding a case where the court was unable to determine whether the ALJ would have found that the plaintiff was disabled if she had followed SSR 12–2p).

Plaintiff's remaining assertions of error need not be addressed, however, the court will briefly mention the ALJ's analysis of Plaintiff's IQ level. The ALJ stated that the consultative examiner, Dr. Schlottmann, found that Plaintiff is "at the upper end of the mild mental retardation scale." (TR. 16). The ALJ then stated, "Her IQ could be as high as 70-75." (TR. 16). The ALJ's conclusion in this regard is neither supported by the record nor the applicable rules and guidelines.

Dr. Schlottmann's record specifically provides, "Overall, it appears [Plaintiff] is currently functioning in the mild mentally retarded range of intelligence. However, she seemed more intelligent than some of her responses indicated and it was not clear to what extent her poor performance was related to her depressed mood ... more formal testing procedures would be needed to confirm [Plaintiff's IQ level.]" (TR. 245). Unfortunately, at the beginning of Plaintiff's administrative hearing, her counsel stated that the record was complete and thus, no further testing was requested. (TR. 28-29). According to the American Psychological Association, however, "Mild Mental Retardation" includes IQ levels in the range of 50–55 to approximately 70. *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th ed., Text Revision 2000). Thus, the ALJ's erroneous conclusion that Plaintiff's IQ level could be as high as 70-75 is simply incorrect, if not wholly arbitrary.

This error is significant because Listing 12.05(B) provides that a claimant with an IQ level of 59 or less is disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Listing 12.05(C) provides that a claimant with an IQ level between 60-70 is disabled if the claimant also has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* On remand, in addition to the reconsideration based on the above analysis, the ALJ must also reconsider Plaintiff's IQ level in light of Listing 12.05(B) and (C).

**CONCLUSION**

The decision of the Commissioner must be **REVERSED AND REMANDED** for further proceedings consistent with this opinion. Judgment will be entered accordingly.

**ENTERED** on March 12, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE